IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

DWIGHT E. BRYAN, et al.,

       Plaintiff,      Case No. 3:10 CV 959

 -vs-

                MEMORANDUM OPINION

BANK OF AMERICA HOME
LOANS SERVICING, LP,

       Defendant.

KATZ, J.

 This matter is before the Court on the Summary Judgment Motion of Defendant BAC Home Loans Servicing, LP[1] (Doc. No. 24), the Summary Judgment Motion of Plaintiffs Dwight Bryan ("Dr. Bryan"), Cheryl Bryan ("Mrs. Bryan"), and CB Properties, Ltd. ("CB," collectively "Plaintiffs") (Doc. No. 25), and Plaintiffs' Motion for Default (Doc. No. 34). The Court notes federal question jurisdiction under 28 U.S.C. §1331, supplemental jurisdiction under 28 U.S.C. §1367, and proper venue under 28 U.S.C. §1391. For the reasons stated below, Defendant's motion will be granted and Plaintiffs' motions will be denied

### I. BACKGROUND

 On December 31, 2004, Plaintiffs obtained a $32,000 loan secured by a mortgage on property at 932 Berry, Toledo, Ohio and represented by a note.[2] The property was a house the Plaintiffs rented out for investment purposes. Defendant serviced the loan.

---

[1] Defendant states that the Complaint improperly names Bank of America Home Loans Servicing, LP, instead. The Court will simply refer to "Defendant."

[2] All three Plaintiffs signed the mortgage, but only Dr. Bryan and Mrs. Bryan signed the note.

On July 28, 2009, a fire damaged the property. The rental home was not salvageable. Plaintiffs received $60,213.30 in insurance proceeds on October 9, 2009. They then requested a payoff statement from Defendant and were told on October 13, 2009 that if they submitted the funds by October 16, the amount would be $30,415.03. Dr. Bryan then sent the check for the insurance proceeds along with some statement to payoff the loan to Defendant. This statement has not been produced, there is only Dr. Bryan's vague description of its contents, and he does not claim that either of the other Plaintiffs signed it. Plaintiffs had not made the regular payment under the loan on October 1, 2009.

Defendant received the insurance proceeds on October 14, 2009. It then sent Plaintiffs a check for $30, 069.82. Plaintiffs believed the loan satisfied. Shortly after submitting the insurance proceeds, Dr. and Mrs. Bryan started receiving collection calls from Defendant. It had not applied the funds to the loan when they were received. On November 23, 2009, Dr. Bryan faxed Defendant a hand written note that he signed directing that the insurance proceeds be used to payoff the mortgage. When that did not work, Dr. and Mrs. Bryan sent Defendant a typed statement, on December 8, 2009, requesting payoff which both signed.

Shortly thereafter, Defendant recalculated the payoff amount for November 23, 2009 and sent Plaintiffs a letter stating that there was a shortage of $492.42. Plaintiffs sent along the additional funds immediately.

The collection calls continued and the insurance proceeds were not applied to the loan until March 22, 2010. The loan was recorded as satisfied on May 28, 2010. Until that date, Defendant had listed the loan as in default to credit reporting agencies. As a result, Plaintiffs had difficulties with some of their loans. Though no credit was actually denied, Dr. Bryan thinks that

he missed out on a lower rate on one loan. Plaintiffs' credit report no longer shows that they were delinquent on the loan, though it does show some credit problems due to loans Dr. Bryan and Mrs. Bryan cosigned for their children.

On the record appropriately before the Court for summary judgment, it is unclear when Plaintiffs informed Defendant of the fire or the extent of the damage or when, if ever, CB ever signed anything with regard to the payoff using the insurance proceeds.

Plaintiffs filed this action in an Ohio state court on March 29, 2010. Their complaint includes breach of the mortgage contract (Count I), fraud (Count II), violation of O.R.C. § 5301.36 (Count III), negligence (Count IV), bad faith breach of contract (Count V), extortion (Count VI), libel and slander (Count VII), grand theft (Count VIII), and violation of the Fair Debt Collection Practices Act (Count IX). They did not specify their damages. Defendant removed the case to this Court on April 29, 2010 due to federal question jurisdiction.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The Court views the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by

3

demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25.

Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)). The party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; *see also Ciminillo v. Streicher,* 434 F.3d 461, 464 (6th Cir. 2006); *Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071; *Bultema v. United States*, 359 F.3d 379, 382 (6th Cir. 2004) . The purpose of summary judgment "is not to resolve factual issues, but to determine if there are

genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

### III. ANALYSIS

*A. Contract Claims (Counts I and V)*

In Ohio,[3] a claim for breach of contract requires proof of four elements: existence of a contractual relationship between the parties, performance under the contract by the party seeking recovery for the breach, breach of the contract by the party against which relief is sought, and damages to the party seeking relief resulting from the breach. *Pavlovich v. National City Bank*, 435 F.3d 560, 565 (6th Cir. 2006) (*citing Wauseon Plaza Ltd. P'ship v. Wauseon Hardware Co.*, 807 N.E.2d 953, 957 (Ohio Ct. App. 2004)). Plaintiffs assert a separate claim for bad faith breach of contract; however, Ohio law incorporates bad faith into a normal contract claim. *See Littlejohn v. Parrish*, 839 N.E.2d 49, 53 (Ohio Ct. App. 2005) ("good faith is part of a contract claim, not necessarily a separate tort claim") (citations omitted); *Lakota Local Sch. Dist. Bd. of Educ. v. Brickner*, 671 N.E.2d 578, 584 (Ohio Ct. App. 1996) ("good faith is part of a contract claim and does not stand alone"). Even the case Plaintiffs depend on for bad faith breach as a separate claim merely discusses bad faith with regard to extra remedies, rather than as a separate claim. *LEH Properties v. Pheasant Run Assoc.*, 2011 WL 378783 (Ohio Ct. App.). Thus, bad faith is merely one form of breach which may allow for extra remedies.

---

[3] The parties agree that Ohio law applies.

Plaintiffs' contract claims fail without regard to whether they can prove that they had a contractual relationship with Defendant. They failed to present evidence of satisfaction under the terms of the mortgage. They note that under § 2 of the mortgage, payments should go to principal after being applied to interest and that § 3 requires return of any funds left over. This, they say, is what happened when they sent in the insurance proceeds and received back the balance. However, the mortgage has a separate provision addressing insurance proceeds from damage to the property: § 5. That section not only requires prompt notice of a claim (which Plaintiffs do not claim to have provided) but also that insurance proceeds first go to repairs, "[u]nless Lender and Borrower otherwise agree in writing." Plaintiffs respond by saying that insurance proceeds automatically go to principal if repair is economically infeasible. Taken together, this means that the contract required "Borrower" to either notify "Lender" that repairs would be impossible or for the parties to agree to a payoff.

The Court will not address whether Defendant should be considered the "Lender," but notes that all three Plaintiffs are listed as the "Borrower." Mortgage § B. Plaintiffs only attempt to present evidence of performance under § 5 is Dr. Bryan's testimony that he sent some sort of note with the insurance proceeds mentioning payoff. Instead they focus on Defendant's disproof of a contractual relationship and the act of remitting the insurance proceeds without describing how that act satisfied § 5. Not only do Plaintiffs fail to present evidence that they promptly notified Defendant of the fire or that they ever demonstrated to Defendant that repairs would be economically infeasible, but they have yet to demonstrate that CB ever communicated an intent to apply the proceeds to principal, or that Mrs. Bryan communicated such intent prior to December 4, 2009 (the extra money they complain that Defendant demanded only covered interest up to

6

November 23, 2009, the first date Plaintiffs can show Dr. Bryan made his intentions to apply the insurance proceeds to the principal known).

Despite only mentioning the mortgage in their complaint, Plaintiffs also claim breach of the note in their briefing. However, like the mortgage, they fail to show that they performed under the terms of the note, notably § 3 regarding regular monthly payments, § 4 regarding the requirement for prepayment (including notice and payment of all, including the most recent, monthly payments), and § 7 regarding notices. Thus, Plaintiffs have failed to present evidence that they performed under the contracts at issue; under Ohio law, a breach claim cannot survive without such proof. The Court will grant Defendant, and deny Plaintiffs, summary judgment on Counts I and V.

*B. O.R.C. §5301.36 (Count III)*

Under O.R.C. § 5301.36(B), a mortgagee must record the satisfaction of a residential mortgage within ninety days of said satisfaction. Failure to do so gives rise to a civil suit by the mortgagor for $250. O.R.C. § 5301.36(C). Plaintiffs state that the mortgage must have been satisfied on October 14, 2009, when they submitted the insurance proceeds. Defendant applied the funds to the mortgage, satisfying it, on March 22, 2010, less that ninety days before the satisfaction was recorded on May 28, 2010.

While Plaintiffs argue that satisfaction *should* have occurred earlier, they do not show why that was *actual* satisfaction which triggers the statute, especially in light of their failure to present evidence of performance under the mortgage. In other words, Plaintiffs never even mention any possible definition of satisfaction, under either the statute or the mortgage. Further, while Plaintiffs may protest Defendant holding the proceeds from October 14, 2009 to March 22, 2010

7

without paying interest, the mortgage clearly entitled Defendant to do just that. Mortgage §5 ("[u]nless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds"). Further, Plaintiffs did not have to pay any cost arising under loan later than November 23, 2009, the earliest date they can show a writing demonstrating intent to use the proceeds to pay off the loan.[4]

Any possible protest by Plaintiffs regarding delay by Defendant in ascertaining the feasibility of repair or their intent regarding direction of the insurance proceeds must be compared to the complaint of ninety-eight calls from Defendant's collections department during the months when the proceeds were held. Because Plaintiffs have not demonstrated why the mere submission of the insurance proceeds "satisfied" the mortgage (or *why* it should have), they have not demonstrated that they can satisfy the elements of a civil suit under O.R.C. § 5301.36. Thus, the Court will grant Defendant, and deny Plaintiff, summary judgment on Count III.

*C. Claims Premised on State Criminal Statutes (Counts VI and VIII)*

Counts VI and VIII allege claims for extortion and grand theft. In Ohio, neither the theft statute nor the extortion statute contains a civil claim. *Groves v. Groves*, 2010 WL 3722641 at *7 (Ohio Ct. App.) (no civil action for extortion); *Zeger v. Lock It Up West*, 2007 WL 4510260 at *2 (N.D. Ohio) (no civil action under O.R.C. § 2913.02). At least with regard to theft, Plaintiffs also cite O.R.C. § 2307.61. However, that section only governs the interaction between civil claims and criminal cases; it does not independently support a civil cause of action. *Jasar Recycling, Inc.*

---

[4] In other words, after November 23, 2009, Defendant essentially paid Plaintiffs interest on the insurance proceeds to offset interest arising under the loan.

8

*v. Major Max Mgmt. Corp.*, 2010 WL 395212 at *7 (N.D. Ohio) (citations omitted). Generally, Ohio law does not allow civil claims under criminal statutes. *Biomedical Innovations, Inc. v. McLaughlin*, 658 N.E.2d 1084, 1086 (Ohio Ct. App. 1995); *see also Putney v. Med. Mut. of Ohio*, 111 Fed. Appx. 803, 807-08 (6th Cir. 2004) (citations omitted). Thus, Plaintiffs' claims for theft and extortion would fail under Ohio law.

However, in their briefing on summary judgment, Plaintiffs cite not only to the Ohio statutes for theft and extortion, but also to the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"). At no point in their complaint did the Plaintiffs ever mention RICO. Further, they do not even discuss the definition of racketeering activity, required for any civil suit under 18 U.S.C. 1964, until their brief in reply supporting their motion for summary judgment (Doc. No. 36). In other words, Plaintiffs never set forth their theory for applying RICO to this case, and Defendant thus has had no chance to investigate or rebut, until the last possible moment. The Court must construe Plaintiffs' Complaint "to do justice." FED. R. CIV. P. 8(e). Because Defendant never had notice of Plaintiffs' RICO theory or how they planned to demonstrate racketeering until summary judgment and Plaintiffs' last brief respectively, the Court will not consider the RICO theory. Plaintiffs may not shift tactics to a theory requiring a completely new, unrelated element this late in the proceedings.

Because neither their state nor federal law theories may move forward, Plaintiffs' claims for theft and extortion fail. The Court will grant Defendant, and deny Plaintiffs, summary judgment on Counts VI and VIII.

*D. State Claims for Fraud, Negligence, and Defamation (Counts II, IV, and VII)*

9

Plaintiffs also raise Ohio tort claims for fraud (Count II), negligence (Count IV), and defamation[5] (Count VII). Plaintiffs' fraud and defamation claims rest exclusively on Defendant's reporting of the status of the loan to credit reporting agencies. On the other hand, Plaintiffs' negligence claim primarily involves the actual crediting of their account and the additional amounts charged, only indirectly implicating communication between Defendant and credit reporting agencies.

The Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, contains two provisions preempting state law. The provision pertinent to the resolution of this case preempts any state claim "with respect to any subject matter regulated under ... (F) [15 U.S.C. § 1681s-2] relating to the responsibilities of persons who furnish information to consumer reporting agencies."[6] 15 U.S.C. 1681t(b)(1). Thus, to the extent Plaintiffs' state law claims relate to Defendant's duty to furnish accurate information to credit reporting agencies, or to respond to disputed reports, they are preempted. Hence, Plaintiffs' fraud and defamation claims fail in their entirety and their negligence claim fails to the extent it relates to Defendant's reporting of payments, rather than application and request for payments. *See Barkho v. Homecomings Fin., LLC*, 657 F.Supp.2d 857, 865 (E.D. Mich. 2009) (applying § 1681t preemption to dismiss a defamation claim).

In response, and rather than defend their claims, Plaintiffs cite to Rule 8(e) and argue that the Court should consider their claims under the FCRA, stating that they believe that they have

---

[5] Plaintiffs title this count "Libel and Slander;" the Court refers to it as "Defamation" for simplicity.

[6] There are two exceptions which do not apply here.

10

adequately pled such claims. Even if the Court allowed Plaintiffs to proceed with their claims as FCRA claims, they would fail. Consumers, such as Plaintiffs "cannot bring a private cause of action for a violation of a furnisher's duty to report truthful information" under §1681s-2(a). *Bach v. First Union Nat'l Bank*, 149 Fed. Appx. 354, 359 (6th Cir. 2005) (citation omitted); *see also Ruggiero v. Kavelich*, 411 F.Supp.2d 734, 736 (N.D. Ohio 2005) ("[e]nforcement of the duty to provide accurate information is expressly limited by the statute to specific federal agencies and officials"). Instead, consumers may only pursue claims against furnishers of credit information, such as Defendant, under § 1681s-2(b). *Bach*, 149 Fed. Appx. At 359. However, in order to proceed with a claim under § 1681s-2(b), "the plaintiff must show that the furnisher received notice from a consumer reporting agency, not the plaintiff, that the credit information is disputed." *Downs v. Clayton Homes, Inc.*, 88 Fed. Appx. 851, 853-54 (6th Cir. 2004) (*citing Young v. Equifax Credit Info. Servs., Inc.*, 294 F.3d 631, 639-40 (5th Cir. 2002)). Plaintiffs have not offered any evidence that any credit reporting agency informed Defendant of any credit dispute. Without such proof, they cannot maintain the proposed FCRA claim, even if the Court allowed them to switch to such a theory. *Ruggiero*, 411 F.Supp.2d at 737.

With regard to Plaintiffs' remaining negligence claim for Defendant's actions or inactions in failing to apply the insurance proceeds to the loan principal and then demanding further payments on the loan, the Court first notes that despite filing a general, rather than partial, motion for summary judgment, Plaintiffs presented no arguments on their negligence claim. However, Defendant, as part of its general motion for summary judgment, provides sufficient reason that the claim cannot move forward so that the Court need not address it from the perspective of summary judgment for Plaintiff.

In Ohio, "[t]he economic-loss rule generally prevents recovery in tort of damages for purely economic loss." *Corporex Dev. & Constr. Mgmt., Inc. v. Shook, Inc.*, 835 N.E.2d 701, 704 (Ohio 2005). Further, "a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable." *Chemtrol Adhesives, Inc. v. American Mfrs. Mut. Ins. Co.*, 537 N.E.2d 624, 630 (Ohio 1989) (quotation omitted). In other words, "[t]ort law is not designed, however, to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement." *Floor Craft Floor Covering, Inc. v. Parma Cmty. Gen. Hosp. Assoc.*, 560 N.E.2d 206, 211 (Ohio 1990) (quotation omitted). Plaintiffs offer no rebuttal to Defendant's claim that the negligence claim is essentially just for breach of contract, the clearest example of economic loss.

Thus, Plaintiffs' negligence claim, to the extent it is not preempted by the FCRA, fails due to the Ohio economic loss rule. Because their state law claims for fraud, negligence, and defamation all fail because of either FCRA preemption or Ohio tort law rules and Plaintiffs cannot make out a claim under the FCRA, the Court will grant Defendant, and deny Plaintiffs, summary judgment on Counts II, IV, and VII.

*E. Fair Debt Collection Practices Act (Count IX)*

The Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq.*, protects consumers from unscrupulous debt collection techniques employed by professional debt collectors. *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2003). However, the FDCPA applies only to specifically defined "debt collectors." *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106 (6th Cir. 1996). Specifically, the statutory definition excludes "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due

12

another to the extent such activity ... (ii) concerns a debt which was originated by such person [or] (iii) concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. §1692a(6)(F).

Defendant argues that it fits the above exclusion. Plaintiffs respond by attacking Defendant's evidence of ownership and/or assignment. However, Plaintiffs offer no evidence that the loan was assigned to Defendant when in default status. Failure of Defendant's proof that it was not a debt collector does not satisfy Plaintiffs' burden of proving that Defendant was a debt collector. *See e.g. Motley v. Homecomings Fin., LLC*, 557 F.Supp.2d 1005, 1009 (D. Minn. 2008) ("[Plaintiffs] must plead facts establishing that [Defendant] is a 'debt collector' within the meaning of the Act. Insofar as they have not done so, their FDCPA claim fails"). Defendant does not have to show that the loan was not in default when acquired, but rather Plaintiffs must show that the loan was in default at such time. Thus, Plaintiffs still need to present evidence on the issue, even if to show that it is in doubt, rather than rely on an absence of evidence; it is their burden. *HDM Flugservice GmbH v. Parker Hannifin Corp.*, 332 F.3d 1025, 1033 (6th Cir. 2003) ("To survive summary judgment, a party must do more than rest on its pleadings; it must produce affirmative evidence supporting its allegations"). Because Plaintiffs have not presented evidence sufficient to demonstrate to the Court that they could show that Defendant was a "debt collector" at trial, the Court will grant Defendant, and deny Plaintiffs, summary judgment on Count IX.

*F. Motion for Default*

In addition to their Motion for Summary Judgment, Plaintiffs filed a Motion for Default (Doc. No. 34) seeking default judgment or, alternatively, to strike the Affidavit of Jessica Palomo (and Exhibit 3 thereto) attached to Defendant's Motion for Summary Judgment. Plaintiffs note

that Defendant filed its Opposition (Doc. No. 28) more than three weeks after their summary judgment motion in violation of this Court's scheduling order (Doc. No. 18). Defendant responds by noting that Plaintiffs' summary judgment motion violated the same order because the Court only extended Defendant's filing deadline (Doc. No. 23). They are both right. Further, Plaintiffs also raise issues with Defendant's disclosure of Jessica Palomo as a witness and Defendant responds by noting Plaintiffs' discovery failings regarding the planning meeting (Doc. No. 11).

Default under the Federal Rules of Civil Procedure is "the sanction of last resort." *Beil v. Lakewood Eng'g & Mfg. Co.*, 15 F.3d 546, 552 (6th Cir. 1994). Due to the failings of both sides with regard to scheduling, and the presence of Defendant's cross summary judgment motion, the Court will not enter a default judgment against Defendant.[7] Because the Court did not consider either Jessica Palomo's affidavit or the contested exhibit, Plaintiffs suffered no conceivable prejudice. Thus, the motion is moot to the extent Plaintiffs seek to strike that evidence. Therefore, the Court will deny Plaintiffs' Motion for Default in its entirety.

## IV. CONCLUSION

For the reasons discussed herein, Defendant's Motion for Summary Judgment (Doc. No 24) is granted, Plaintiffs' Motion for Summary Judgment (Doc. No. 25) is denied, and Plaintiffs' Motion for Default (Doc. No. 34) is denied. Case closed.

IT IS SO ORDERED.

  s/ *David A. Katz*
DAVID A. KATZ
U. S. DISTRICT JUDGE

---

[7] In the future, counsel on both sides should pay more attention to Court orders to see when they supercede the local rules (Local Rule 7.1(d) says "[u]nless otherwise ordered") and to which parties they apply.